310-0086, people of the state of Illinois, an act to leave by Justin Nicolosi v. Ronald Barrow, and found by Alan Andrews. Mr. Andrews. May it please the court, counsel, I didn't ask for oral argument in this case, and I'm pretty happy with the first two issues, but I was really happy when I presented it in my brief, and I'm going to try and do a little better job in oral argument here by looking at it from a different perspective. I'm not going to bring in any new facts or anything, but I think I can explain why shoe testing should be covered by section 116-3 better than I did in my brief. Basically, the shoes are important in this case because they're the only physical evidence that links Mr. Barrow to the decedent's house. There was a piece of plywood in the basement here where the decedent was found. There were many, many foot impressions on this piece of plywood. Some months later, when Mr. Barrow was arrested in Maryland, the police seized a pair of Hush Puppy shoes, I believe they were, and an expert for the state compared those shoes from Mr. Barrow's apartment to all of these many impressions on this board, and he concluded that perhaps these shoes could have made two of the impressions, but he couldn't be certain of that for two reasons. First of all, the pattern, the impressions on the board were very distinct, and the expert testified that that meant that the shoes had not been worn very much when those impressions were made. In contrast, the shoe seized from Mr. Barrow were quite worn. Of course, the expert couldn't rule Mr. Barrow's shoes out because he didn't know whether they had been you know, it could have been they were new at the time of the offense and had worn down later, or it could have been that they were always worn and they did not make the impression. So that's kind of ambiguous. The second and even more important thing for the purpose of this appeal is that in the heel of one of these shoes, there is some sort of circular defect, and for the same reason that did not appear on the two impressions that may have matched the shoes. And the expert for the state for the same reason though would not eliminate Mr. Barrow's shoes just because of this defect in the shoes. He said maybe the defect happened after the crime was committed by Mr. Barrow. We just can't know. So that was the state of the evidence of the shoes at trial. They couldn't have made the print. There was no way to eliminate them based on the evidence that was presented at trial. Mr. Barrow now has an expert who apparently worked for the Hush Puppy Company and would be able to determine whether or not this circular defect in the heel of the shoe was a manufacturing process error. How is he going to do that? That isn't clear. That wasn't explained. It just wasn't contested that he would not be unable to do that. I assume he's familiar with the manufacturing process. Well, doesn't it have to be some kind of technology that wasn't available at the time of the trial? No, respectfully, I disagree with that. That appears in subsection B. That appears in A2 where it says if it's previously subjected to testing, can be subjected to additional testing utilizing a method that was not scientifically available at the time. Now, Mr. Barrow comes under A1. These have never been tested. So the subsection A2 doesn't come into play where what the statute is trying to prevent would be doing the same DNA analysis over and over again. But here, these shoes were never tested by any sort of expert other than the state's expert. It wasn't tested other than by the state's expert. The difference there is that he could not determine when this defect occurred and that the new expert can. Now, whether you'd call that technology I don't know exactly. Probably not. But perhaps. But in any event, it would be an expertise that was not applied to the original evidence. And that's the argument that I would make about why it can be tested under this new statute. And, you know, that's obviously one of the two things where this shoe testing doesn't, it isn't an obvious thing that it fits under the statute. But if we buy your argument it seems to me as an, the obvious implication of that is after every trial you come in and say, wait a minute, I got a much, much better than new expert who has more expertise than the guy that tested it the first time. Let's do it again. Well, I suppose that could be a concern. But, I mean, it's a possibility. But I mean, I just don't I don't know how often that would actually happen. I mean, are there cases where there are like a lot of shoe experts? I mean, I don't know. I see your point. You could apply it to anything. I mean, it wouldn't be limited to shoes if you're saying, gee, this guy has some expertise that wasn't applied the first time, so let's apply it this time. And, I mean, where does that end? Well, I think one thing that distinguishes this case from the other, and again, this wasn't disputed at the trial, that he would be able to determine the crucial fact about this shoe. Did the defect exist at the time the print was made or when the shoe was made? And that would distinguish it from a case where maybe our ballistics guy can find a our fingerprint guy can find something that's different. It's never really been contested that this would be a much superior examination. And I don't know where you would draw the line, but it seems to me that in this case the line is clear. This would be this positive about a very significant piece of the state's evidence. And that's why the testing in this case would be appropriate. Tim, if we want to keep talking about the problems why the shoe testing might not come under the statute, and we may as well because that's why I'm here, you know, you have the whole problem that the statute doesn't say anything about testing shoes either. My point on that would be, the statute says, motion for fingerprint integrated ballistic identification system or forensic testing not available at trial regarding actual innocence. And my argument is that looking at these shoes comes in under forensic testing. The statute doesn't limit itself at the outset to forensic DNA or anything. It uses a very broad term of forensic testing. And the case that Mr. Barrow pointed out at trial where the defendant, I think it was Percy, the defendant wanted to have ballistics testing done. And at the time it said motion for fingerprint or forensic testing. And the court held it doesn't say ballistics testing, therefore he can't have ballistics testing. As soon as that was upheld on appeal, the legislature amended the statute to specifically provide for ballistics testing. And I think what that shows is that the statute is supposed to be a broad provision for providing forensic testing as it says at the outset. And the legislature by legislatively reversing the appellate court's attempt to limit it to specific types of forensic testing shows that the legislature wants this statute to be considered broadly. Its purpose is a broad purpose and it would cover testing shoes in a case like this where it's a very important piece of evidence. And when you think about it, there's really no other way for Mr. Barrow to get these shoes tested. If he raised this issue in a post-conviction petition, he can't just say I need the shoes tested because that's not a constitutional claim. He could say my trial counsel was ineffective for not testing the shoes, but he can't win that ineffective assistance claim without having the shoes tested because he has no way to establish prejudice from counsel's failure to test the shoes. So if this statute isn't read broadly to cover this situation, then Ron Barrow's out of luck. In the document or any information that you received about the expert or the employee of Hush Puppies, they never say we've always been able to do this or there's no indication of a time frame? I don't recall that, no. As far as I know, there was nothing saying we've developed this process since 1984 when the trial was. I don't remember anything like that at all. My whole argument on that point would be that it was unavailable because of trial counsel's failure to have it tested by somebody who could make that determination. And that's the second point I think where it does not clearly fall under the statute. But first, as I said before, briefly, Mr. Barrow's coming in under A1 where it was not subject to the testing which is now requested at the time because the state's expert couldn't tell. He admitted he didn't know when that defect occurred. We don't even know what the testing is, right? Other than the fact that we've got somebody who worked for Hush Puppies and says, oh shoot, I can tell if it was a manufacturing defect. I agree that it just wasn't contested. There was no need for Mr. Barrow to develop. I don't recall there being any contest about whether or not the shoe guy was actually experienced and could make this test. So there was no basis for Mr. Barrow to go in depth. But the second point I would make is this is just a motion for the testing. This should be the easy part because even assuming that this testing is positive, the hard part comes next for Mr. Barrow when he's got to prove his actual innocence. So I don't see that by allowing this testing, it's going to create any great burden on the system. This is just the first and should be the easiest hurdle to jump. And then he's got to try and prove that yes, indeed, I'm actually innocent. And there are some of the appellate cases discuss that this is just a motion for testing. We should be somewhat lenient about that. And then the defendant's got to come in and do the heavy lifting of trying to establish his innocence. Because this isn't going to get Mr. Barrow necessarily a new trial or an appeal bond or anything like that. It's just going to get him a test result that he can then maybe move on with if it's favorable. And then he can file his PC alleging actual innocence. So what we're asking here isn't going to have any catastrophic results for the state or anybody else because it's very limited relief. We just want the shoes tested. And the test may well not even eliminate Mr. Barrow. Of course, it's his position that it would. But anyway, I just think that that's yet another reason to read the statute broadly. It doesn't grant the defendant any kind of substantive relief. It merely allows him to proceed with his substantive claims. As for the rest of the statute, honestly, I think those are the two real questions in this case. Does it have to be a new technology? And as I've said, no. It just had to not have been subjected to testing at the time of the trial. And it wasn't. And whether or not shoes are covered under this broad term of forensic testing. And I believe that they are. But if we granted this and allowed for testing and it did come back favorable, in the previous appeal by Mr. Barrow, he uses this for claim of ineffective assistance of counsel and the Supreme Court said no, even if they had tested these, it's just a small part of why he was convicted. So how do we get to this with material advance? Well, it's not a small part. And it's the only thing that places him inside the residence. The only thing. And there's a spot of blood on the shoes that's type O that could have been Mr. Barrow's, could have been Mr. Oberto's, could have been 45% of the white male population, I believe. This is the only thing. It doesn't exonerate him, but that's not what the standard of material, what is it? His claim of actual innocence. It has to significantly help it is basically what the court said, like in Savory. I don't have the citation written down in which case, but it's evidence that significantly advances the claim of actual innocence. And they do that because they're the only physical evidence linking him to the crime. And yes, it's only one piece of evidence. And there's other evidence, but Mr. Barrow's always maintained that Rona has framed him. We certainly are familiar with cases where people have been exonerated from death row, where they've been framed, where there's seemingly been overwhelming evidence. And the type of objective evidence that you have here, the shoes, would, I say, significantly advance his claim that he wasn't there and that Rona was framing him. Now, whether he can make the whole deal out of that, I don't know, but it meets the statutory test. And then it's his problem about whether or not he can convince this court or the Illinois Supreme Court that he's actually innocent. But I think it meets the minimal standard of advancing the claim of actual innocence. The only thing I would mention about issue two, if there were no more questions about the shoes, is the testimony by Mr. Anselme, I don't know how you pronounce his name, that he doesn't want to test it, that it's difficult to test the cushion, the clothes, that the state police lab would tell the local police that they wouldn't test it. Whether it's good policy to have a lab directing the investigation of a local crime, I don't know. But his testimony is not that that evidence cannot be tested, it's that it would be difficult and that he doesn't want to test it. And that does not, that's nowhere in the statute that it's got to be easy to test or anything like that. You may be right, but is there a common sense element in the statute at all? The common sense thing for me on this specific issue would be that Mr. Anselme testified that they have people who can look on these exhibits and find out whether there's anything to test. Rather than him coming into court and glancing at it and saying, I didn't see anything, the common sense thing would be to order this material sent to the lab where a stains expert would look at it and see if there is anything there. And if there's nothing there, it's done. We're done. Mr. Barrow goes away. Mr. Barrow's actually satisfied. He said that much, that if you tell me from the lab that there aren't any stains, I trust you guys. So the common sense would be to have it examined. What about the blood around the bullet hole? He said that is almost certainly the decedent's and it wouldn't be of any evidentiary value. And you can't really argue with that. We don't care what the decedent's blood is there. Mr. Barrow is asserting that there's probably DNA on other things. And there's one other reason to believe that there might, aside from all this evidence about whether there had to be a struggle, when the state was trying to bring out that maybe the seat cushion had been contaminated, Mr. Anselme said, oh yeah, well anybody who touches anything can leave DNA on it. So if you apply that to the state's argument that there couldn't be any DNA on these things, I think you see that that undercuts the state's argument significantly. There could be DNA from the person who was holding that pillow down on Mr. Roberto's face and Mr. Anselme's testimony establishes that. So I think the common sense thing to do is to send those few items to the state. If you don't find any stains, you're done. If you find stains, test them. If they're favorable to Mr. Barrow, he files his document alleging he's actually innocent. If they're not favorable, he's done. It might show he's guilty. I don't have any idea. But he wants it tested and I think that the statute should be a low standard. It should be easy to meet because all you're looking for is a couple of tests. I don't really have anything else to add. Are there any other questions? No, I don't think so. Thank you, Mr. Evans. Mr. Nicolosi? Good morning, Your Honors. May it please the Court. May it please the Counsel. I apologize. I'm a little under the weather. I blame Gary Ganivick. I asked for Issue 3, the shoe impression issue. I'll be honest with you, I'm surprised that dominated the conversation here this morning. I believe that could be the most easily disposed of issue. The statute, which operated at the time the defendant filed his motion in 2008, specifically says that the defendant may make a motion for testing of fingerprint evidence, which of course this is not, integrated ballistic identification system evidence, which of course this is not, or forensic DNA testing, which of course this is not. It specifically says DNA testing in the statute. People will add that the case of People v. Pursley in the Second District case in 2003 is almost identical to this one. At that point, Section 116-3, as it read, did not include integrated ballistics identification system testing as it does now. But the defendant in that case said, I believe that that type of testing should be included. This statute should be reviewed broadly and basically similar to the counsel's argument here. It should incorporate all kinds of testing. And that court said no. If they wanted to include integrated ballistic identification system testing, the legislature clearly could have included it. The same goes for the shoe evidence in this case. If the legislature wanted that, if they wanted them to make the statute broader, they clearly could have. They did not. Therefore, this request for the shoe print testing could not have been granted based on the statute. As for the first two issues, very simply on the first issue, whether or not it was proper to allow the people to call a witness, the people believe that it is fundamental to the adversarial process that a relevant witness be called to support their position in this case. Mr. Anselmi was clearly relevant. He provided a lot of information for the determination of whether evidence gleaned from the testing would have been materially relevant to defend his claim. So people will essentially stand on our brief on that issue. As for issue two, people will essentially stand on our brief on that one too. But defense counsel commented, I believe in his reply brief, that it was inappropriate for the people in their brief to discuss the overwhelming evidence in this case as part of the consideration as to whether any new evidence would be materially relevant. And people would just submit that in order to determine if new evidence would advance his interests, we necessarily have to look at what evidence is already in place. To do that, the Supreme Court in their 1989 opinion stated that the evidence was overwhelming in this case and I'm not going to go through the evidence again unless the Court would like me to. It's laid out in my brief. But anyway, to sum up here, the people believe that the defendant's request to test the cushion and the clothes was properly denied because it doesn't have the potential to materially advance his claim of actual innocence. Are there any questions? Thank you very much. Thank you, Mr. Nicolosi. Mr. Andrews, any rebuttal? I'd just like to discuss the overwhelming evidence argument just briefly. First of all, this wasn't an issue at trial. The state never said the evidence is so overwhelming that there's no point in having this testing. In fact, the state agreed to have evidence tested at trial. So obviously the state's position at trial is that this could make a difference. Secondly, when the trial judge ordered testing at trial, implicit in that decision was that the evidence is not so overwhelming that the testing would be worthless. I think this Court should defer to her implicit ruling that testing is appropriate in this case. If you want to look at whether or not the evidence is overwhelming, I can't disagree that the Illinois Supreme Court repeatedly says that it is. But Mr. Barrow's always claimed that he did not commit this crime. They have all this evidence from Mr. Rona, who Mr. Barrow says framed me, learned the information from the police. On the tape statement, Mr. Barrow doesn't name the decedent or anything like that. There are a few discrepancies between his description of the crime and what actually occurred. Things like, you know, he said that I came in after midnight while there's evidence that looked like the light came back on at 1030. And I hit him all over and there were no marks on Mr. Roberto's body except for the bullet wound. The evidence, like I said, the Illinois Supreme Court says it's overwhelming, but there are discrepancies. If the DNA came back or the shoes came back, that would change the entire case. You would have at least some of the physical evidence. You would have physical evidence that tended to exonerate Mr. Barrow. You would have that much more reason to believe that Mr. Rona framed him and the calculus of the case would have changed. And I think that that's what a lot of these second district cases talk about when they say we should grant testing without being overly concerned about the overwhelming nature of the evidence. Because if it is a favorable result, the calculus, the weight of the evidence is significantly changed. And again, this isn't going to be a new trial. We're just asking for Mr. Barrow to have a chance to get the testing so that he can make his actual innocence claim. I talked longer in rebuttal than I thought I would have. Thank you. Thank you, Mr. Andrews. And thank you also, Mr. Nicolosi. The matter will be taken under advisement.